IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAYANA GARCIA, individually and on behalf of all others similarly situated pursuant to 29 U.S.C. § 216(b), | § § § § § | |
| Plaintiffs, | § | |
| v. | § § | |
| FUENTES RESTAURANT MANAGEMENT SERVICES INC. d/b/a Gloria's Restaurant; GLORIA'S RESTAURANT LAS COLINAS LLC d/b/a Gloria's Restaurant; NANCY FUENTES FAIRVIEW INC. d/b/a Gloria's Restaurant; and JOSE FUENTES, | § § § § § § § § § § | Case No. 3:23-cv-01585-K |
| Defendants. | § | |

**FINDINGS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants Fuentes Restaurant Management Services Inc., d/b/a Gloria's Restaurant; Gloria's Restaurant Las Colinas LLC, d/b/a Gloria's Restaurant; Nancy Fuentes Fairview Inc., d/b/a Gloria's Restaurant; and Jose Fuentes's (collectively, "Defendants") Motion to Compel Individual Arbitration and to Dismiss with Prejudice (ECF No. 18). The District Judge referred this Motion to the United States Magistrate Judge specifically for findings

1

and a recommendation. *See* Order (ECF No. 61).[1] As set forth below, the undersigned recommends that the District Judge DENY the motion to compel arbitration because Defendants substantially invoked the judicial process and thus waived their right to compel arbitration.

**Background**

This putative collective action under the Fair Labor Standards Act (FLSA) arises out of Plaintiff Dayana Garcia's allegations that Defendants violated the FLSA's tip credit provisions and deprived Garcia and other employees like her of the wages rightfully owed to them. Compl. ¶ 14. Specifically, under the FLSA's tip credit provision, an employer may lawfully pay an employee less than minimum wage by taking a credit for the portion of tips an employee receives from customers. *Id.* at ¶ 2–3. The employer must comply with the strict requirements in the FLSA

---

[1] The First and Third Circuits have held that motions to compel arbitration are non-dispositive for purposes of 28 U.S.C. § 636 and, thus, can be decided by a magistrate judge. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010); *V.I. Water & Power Auth. v. Gen. Elec. Int'l, Inc.*, 561 F. App'x 131, 133–34 (3d Cir. 2014) (unpublished). And district courts in the Fifth Circuit have held that magistrate judges have the authority to decide a motion to compel arbitration, so long as no substantive claims are dismissed. *See Carrillo v. ROICOM USA, LLC*, 486 F. Supp. 3d 1052, 1060 (W.D. Tex. 2020) (collecting cases and concluding that "all four federal judicial districts in Texas have held motions to compel arbitration to be non-dispositive matters"). But the Fifth Circuit has not directly ruled on the issue. *See Lee v. Plantation of Louisiana, LLC*, 454 F. App'x 358, 360 n. 3 (5th Cir. 2011) ("[W]e need not reach the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of the standard of review by the district judge of the magistrate judge's order."). Accordingly, the undersigned issues these findings and a recommendation for the disposition of the motion to compel arbitration, as provided for in the District Judge's referral order.

in order to lawfully utilize the tip credit—otherwise, it must pay employees at least minimum wage. Defendants allegedly violated these requirements by failing to provide notice to Garcia and other employees of the tip credit, requiring Garcia and other employees to pay for certain items such as uniforms in order to work for Defendants, improperly handling the tip pool, and requiring Garcia and other employees to perform improper types and excessive amounts of non-tipped work, all while paying Garcia and other employees less than minimum wage. *Id.* at ¶ 5–12.

After Garcia filed this lawsuit in July 2023, the parties conferred and filed a Joint Report (ECF No. 12). In the Joint Report, filed on September 19, the parties requested that the case proceed in two phases and provided the Court with a joint status report including proposed deadlines for Phase One discovery, dispositive motions, and mediation. *See* Joint Report. Though the parties agreed upon a mediator and noted their openness to settlement, the Joint Report included an unambiguous statement that "[t]he parties are not considering arbitration to resolve this litigation and Defendants are not aware of any arbitration agreements." *Id.* at 13.

Over the next several months, the parties commenced discovery and at least six individuals filed consents to join the lawsuit as "opt-in" plaintiffs. *See* Notices (ECF Nos. 14, 15, 16). On December 6, the parties mediated their case, but the mediation did not result in a settlement. *See* Status Report (ECF No. 17).

Then, on December 21, Defendants filed the pending Motion to Compel Individual Arbitration and to Dismiss with Prejudice, arguing that Garcia's claims are subject to a binding mutual agreement to arbitrate. *See* Mot. Compel Arb. (ECF No. 18); Mot. Compel App'x (ECF No. 19). Specifically, Defendants contend that when Garcia began her employment at Gloria's, she received a Mutual Agreement to Arbitrate (MAA) and a separate, blank Receipt of SPD and Mutual Agreement to Arbitrate Acknowledgment (the "Acknowledgment"), which she signed. Mot. Compel Arb. 3. Defendants argue that by signing the Acknowledgment, Garcia had notice of and agreed to the terms of the MAA. *Id.*

In pertinent part, the MAA provides that "Covered Claims shall be exclusively resolved by binding arbitration." Mot. Compel App'x 6. The MAA defines "Covered Claims" to include:

> [A]ll claims that Company or Claimant may have which arise from: Any injury suffered by Claimant while in the Course and Scope of Claimant's employment with Company, including but not limited to, claims for negligence, gross negligence, and all claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, of drugs and medical appliances, emotional distress, exemplary or punitive damages, and any other loss, detriment or claim of whatever kind or character.

*Id.* at 7. The MAA further states that "[a]ny question as to the arbitrability of any particular claim shall be arbitrated pursuant to the procedures set forth in this Agreement." *Id.*

The Acknowledgment provides, in its entirety:

4

> **RECEIPT OF MATERIALS**. By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Summary Plan Description (the "SPD") for **the Fuentes Restaurant Management Services, Inc. et al** Occupational Injury Employee Benefit Plan, effective **June 28, 2012**.
>
> **ARBITRATION**. I also acknowledge that this SPD includes a mandatory company policy requiring that certain **claims or disputes relating to an on-the-job injury (that cannot otherwise be resolved between the Company, or any entity or person listed on Schedule A or defined as Company in the arbitration agreement and me) must be submitted to an arbitrator**, rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Company at any time on or after **June 28, 2012**, I am accepting and agreeing to comply with these arbitration requirements. I understand that the Company is also accepting and agreeing to comply with these arbitration requirements. All covered claims brought by my spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns are also subject to the SPD's arbitration policy, and any decision of an arbitrator will be final and binding on such persons and the Company.

*Id.* at 36 (emphasis in original).

In view of these documents, Defendants move the Court to compel Garcia to arbitrate her dispute, to dismiss the opt-in plaintiffs' claims, and to dismiss the case in its entirety with prejudice. Mot. Compel Arb. 8.[2]

Garcia filed a Response in Opposition (ECF No. 28) and Appendix (ECF No. 29), in which she argues that Defendants waived or forfeited their right to pursue

---

[2] In view of the Supreme Court's recent, unanimous decision in *Smith v. Spizzirri*, it is clear the Court lacks discretion to dismiss any claims. *Smith v. Spizzirri*, No. 22-1218, 2024 WL 2193872, at *3 (U.S. May 16, 2024) (holding that under Section 3 of the FAA a district court lacks discretion to dismiss a case—rather than issuing a stay—when the dispute is subject to arbitration and a party requests a stay pending arbitration).

arbitration by proceeding with this litigation and with their statement in the Joint Report that "[t]he parties are not considering arbitration to resolve this litigation and Defendants are not aware of any arbitration agreements." *See* Pl.'s Resp. 12–16. Garcia further argues that Defendants failed to establish the existence of an enforceable agreement to arbitrate and that the MAA does not apply to her FLSA claims. Garcia claims that she did not see, receive, or have the opportunity to review the MAA, and any question of whether the parties agreed to arbitrate should be decided by a jury because she has put the creation of an agreement to arbitrate "in issue." *See id.* at 22–23. Finally, she objects to dismissing the case in its entirety because Defendants have not sought to compel any of the opt-in plaintiffs to arbitrate their claims. *See id.* at 25–26.

Defendants filed their Reply (ECF No. 39) and an Appendix (ECF No. 40), in which they argue—for the first time—that they were "unaware" of the MAA at issue here until November 2023, when "it came to light" during the discovery process. The Motion is therefore fully briefed and ready for a recommendation.

## Legal Standard

Historically, American courts adopted from the English common law "centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974). But Congress passed the Federal Arbitration Act (FAA) to reverse this hostility and "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Section 2 of the FAA provides that "[a] written provision in . . . a contract

6

evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity or the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Rent-A-Ctr.*, 561 U.S. at 67.

Parties aggrieved by another party's failure to arbitrate a claim pursuant to a written arbitration agreement may petition a federal court "for an order directing that such arbitration proceed in a manner provided for in such agreement." *Id.* (quoting 9 U.S.C. § 4). "Once the court is satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, it shall order arbitration." *Gezu v. Charter Commc'ns*, 2021 WL 419741, at *4 (N.D. Tex. Jan. 7, 2021) (Rutherford, J.) (internal quotation marks omitted) (quoting *Floyd v. Kelly Servs., Inc.*, 2019 WL 4452309, at *2 (N.D. Tex. Aug. 30, 2019) (Rutherford, J.) (citing *Rent-A-Ctr.*, 561 U.S. at 67 (citing 9 U.S.C. § 4))).

"Courts perform a two-step inquiry when considering whether to compel arbitration." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). First, the court determines "whether the parties agreed to arbitrate the dispute," *Floyd*, 2019 WL 4452309 at *2, as "[a]rbitration is strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). This inquiry involves answering two questions: "(1) whether there is a valid

agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). The strong federal policy favoring arbitration does not apply "to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* Second, the court must determine "whether any federal statute or policy renders the claims nonarbitrable." *Floyd*, 2019 WL 4452309 at *2 (internal quotation marks omitted) (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)).

"[W]here a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Will-Drill Res., Inc.*, 352 F.3d at 219. Therefore, "[a] district court must hold a trial on the existence of an arbitration agreement if a motion to compel arbitration is filed and 'the making of the arbitration agreement . . . [is] in issue.'" *Dickson v. Continuum Glob. Sols., LLC*, 2022 WL 847215, at *2 (N.D. Tex. Mar. 22, 2022) (quoting *Chester v. DirecTV, LLC*, 607 F. App'x 362, 364 (5th Cir. 2015)). "Once a defendant meets its initial burden of proving the existence of a valid agreement to arbitrate, the burden shifts to the plaintiff to put the making of that agreement 'in issue,'" such as by "unequivocally deny[ing] that [the plaintiff] agreed to arbitrate and produc[ing] some evidence supporting [that] position." *Id.* Although the Fifth Circuit has not expressly decided whether this "some evidence" standard is the same as the summary judgment standard, it has explained that "it is sufficient that, where competent evidence showing the formation of an agreement to arbitrate has

8

been presented, § 4 requires a party resisting arbitration to produce *some* contrary evidence to put the matter in issue." *Gallagher v. Vokey*, 860 F. App'x 354, 357–58 (5th Cir. 2021) (emphasis in original) (cleaned up).

The right to arbitration may be waived. In the Fifth Circuit, a party waives its right to seek arbitration by "substantially invoking the judicial process," that is, "engag[ing] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009). The Supreme Court has held that prejudice is no longer "a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). Thus, the surviving test for waiver in this circuit is simply whether the party has substantially invoked the judicial process, evincing a desire to resolve the dispute through litigation. *Seifert v. United Built Homes, LLC*, 684 F. Supp. 3d 555, 569 (N.D. Tex. 2023) (Brown, J). In *Morgan*, the Supreme Court also counseled that "a court must hold a party to its arbitration contract just as the court would to any other kind," and importantly, that "a court may not devise novel rules to favor arbitration over litigation" and that "the federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 596 U.S. at 418.

## Analysis

As a threshold matter, Garcia urges the Court to deny Defendants' Motion to Compel Arbitration because Defendants have waived their right to compel her

9

to arbitrate this dispute.[3] Pl.'s Resp. 11. Specifically, Garcia argues that Defendants have substantially invoked the judicial process by (1) filing an Answer that did not raise the possibility of arbitration in its affirmative defenses; (2) participating in early mediation, which did not resolve the dispute; (3) representing to the Court in the Joint Report that the parties were "not considering arbitration to resolve this litigation" and that Defendants were "not aware of any arbitration agreements;" and (4) engaging in formal discovery by exchanging requests for production and interrogatories. *Id.* at 8–10. Defendants respond that these actions do not reflect an overt intention to litigate the dispute, and further that Defendants' statement in the Joint Report was not an intentional waiver because they did not know about the existence of the MAA at that time. Defs.' Reply 3–5. Instead, Defendants argue,

---

[3] Given the conclusion that Defendants waived their right to compel arbitration, the Court may pretermit consideration of whether a valid agreement to arbitrate exists and whether the dispute in question falls within the scope of the arbitration agreement. However, the undersigned observes that Garcia has adduced evidence that may be sufficient to put the making of the arbitration agreement "in issue." *Acosta v. Odle Mgmt. Grp., LLC*, 2020 WL 4060782, at *4 (W.D. Tex. July 20, 2020) (affidavit stating that plaintiff did not see, review, or sign the agreement put the making of the agreement to arbitrate in issue). Defendants rely on the broad language in the MAA to support their motion to compel arbitration. But Garcia unequivocally states that she never saw or received the MAA, Garcia Decl. ¶ 4 (ECF No. 29-1), and the MAA itself is not signed. Thus, if Defendants had not waived their right to compel arbitration, it is likely that the Court would be required to hold a jury trial on the existence of the alleged arbitration agreement. Further, it is not clear that Garcia's FLSA claims fall within the scope of the MAA. The MAA includes a delegation clause that requires this Court to submit the question of arbitrability to the arbitrator—if it finds a valid agreement exists.

they moved to compel arbitration "immediately" upon discovering that Garcia's claims were arbitrable. *Id.* at 5.

Since the Supreme Court eliminated both the prejudice requirement and the presumption against a finding of waiver in *Morgan*, the Fifth Circuit has not elaborated on the current test for determining if a party has waived its arbitration rights. However, district courts in this Circuit have asked simply whether the party has substantially invoked the judicial process to evaluate whether the party has waived its arbitration rights. *See Seifert*, 684 F. Supp. 3d at 569. The Court therefore evaluates whether Defendants have engaged in an "overt act evincing a desire to resolve the arbitrable dispute through litigation rather than arbitration," without applying a heavy burden of proof to the party asserting waiver, or any presumption against a finding of waiver. *Id.* (quoting *Morgan*, 596 U.S. at 418; *Petroleum Pipe Ams. Corp.*, 575 F.3d at 480). Here, Defendants have engaged in several such overt acts—namely, filing an answer and defending this litigation for almost five months, participating in discovery, attending mediation, and expressly representing to the Court in the parties' Joint Report that Defendants did not intend to pursue arbitration of Garcia's claims. *See* Joint Report 13 ("The parties are not considering arbitration to resolve this litigation").

Defendants argue that the statement in the Joint Report "can't be an intentional waiver because . . . Defendants were unaware of the Arbitration Agreement when they made the statement." Defs.' Reply 4. Defendants insist that "a party must know it has a right in the first place to waive it," and rely on the

11

*Tristar* case to argue that litigating a dispute in ignorance of the right to arbitrate does not demonstrate a desire to resolve the arbitrable dispute through litigation rather than arbitration. *Id.* at 3–5; *Tristar Fin. Ins. Agency, Inc., v. Equicredit Corp. of Am.*, 97 F. App'x 462, 464 (5th Cir. 2004) (per curiam).

However, Defendants' reliance on *Tristar* is misplaced because the facts are distinguishable from the facts in this case. In *Tristar*, the party seeking to compel arbitration was unaware of the arbitration agreement until it was produced in discovery because there were circumstances such as the winding down of the business, vast downsizing of staff, and sale of the loan portfolio that meant the party did not have "the ready access to important documents that would be expected of a typical ongoing corporate enterprise." *Tristar Fin. Ins. Agency, Inc.*, 97 F. App'x at 465. Here, by Defendants' own account, the MAA and Acknowledgment have been standard components of the "new-hire paperwork" restaurant managers have allegedly provided to all new employees since at least 2014—which is when Arturo Ramirez, the current operations manager for Fuentes Management became involved with new-hire onboarding practices. *See* Defs.' App'x 2. Ramirez states that he instructs managers across 22 locations to provide the MAA and an Acknowledgment, in both English and Spanish, to all new employees. *Id.* Also, Francisco Manrique—who, since 2019, has served as the manager of the Irving restaurant where Garcia worked—claims that "[i]n his role as Manager, [he] give[s] all new hires certain new-hire paperwork," including the MAA and Acknowledgment. *Id.* at 21.

12

Defendants have not presented any circumstances similar to those in *Tristar*, such as business downsizing, sale, or winding up, that would explain why the MAA was not readily available to Defendants when they received notice of this lawsuit. To the contrary, Defendants have had stable management and allegedly consistent practices in place for years. Indeed, as late as December 2023, Defendants purportedly continued their routine practice of providing all new hires with the same MAA and form Acknowledgment they claim to know nothing about in this case. *Id.* at 22. Even if Defendants' litigation counsel lacked actual knowledge of Garcia's signed Acknowledgment until November 2023, the Court must "not condone a party's failure to apprise itself of its own key documents in litigation." *Tristar Fin. Ins. Agency, Inc.*, 97 F. App'x at 466. Defendants do not set forth any facts that would support their assertion—raised for the first time in their reply brief—that Defendants themselves were "unaware" of the MAA and Acknowledgment or were "in ignorance" of their alleged right to arbitrate.[4]

*Vollmering*, the only post-*Morgan* case Defendants cite in support of their argument that they have not waived their right to pursue arbitration, is also distinguishable. *Vollmering v. Assaggio Honolulu, LLC*, 2022 WL 6246881, at *13–15 (S.D. Tex. Sept. 17, 2022). There, the defendants seeking to compel

---

[4] Nor can the Court square Defendants' assertion that they were ignorant of their right to arbitrate with their position in response to Plaintiff's Emergency Motion for a Protective Order that "Gloria's regularly reviews and updates employee policies and documents." Def. Resp. App'x at 3 (ECF No. 42-1).

arbitration expressed at the pretrial conference their belief that plaintiffs had signed arbitration agreements with a different party, and therefore that defendants would "not be pushing arbitration" at that time. *Id.* at *14. Then, during discovery, the employee agreement containing an applicable arbitration clause was produced, and defendants subsequently moved to compel arbitration. *Id.* The district court concluded that the defendants had not waived their arbitration rights. However, unlike Defendants in the instant case, the defendants in *Vollmering* anticipated that an arbitration agreement may come to light during discovery—in their joint report, the parties stated that they had "discussed whether this case should or must be submitted to binding arbitration but are awaiting the production of the signed arbitration agreements." *Id.* The court ultimately concluded that the defendants in *Vollmering* had preserved their arbitration rights by anticipating the existence of an applicable arbitration agreement in its dealings with the plaintiff and with the court. *Id.* at *15 (finding no waiver in part because "the parties stated in their joint discovery and case management plan that they were awaiting the production of the signed employment agreements," and "counsel for [defendants] was careful to note that those defendants were sensitive to the danger of waiving their right to arbitrate and wished to avoid such a waiver").

  Defendants here seek to have it both ways—they claim ignorance of the MAA and Acknowledgement until November 2023, but also that the MAA had been routinely handed out to all new employees at all Gloria's locations as a matter of course since at least 2014. Indeed, Defendants have not provided any context for

14

why their late discovery of the MAA should qualify as anything other than the same "failure to apprise itself of its own key documents in litigation" the Fifth Circuit cautioned against in *Tristar*. Defendants filed an answer, participated in discovery, unequivocally represented to opposing counsel and the Court that they were not considering arbitration to resolve this dispute, and participated in mediation. Only after they failed to resolve the dispute, and other plaintiffs began to opt-in to the lawsuit, did Defendants advance the argument that Garcia must arbitrate her claims. Under the circumstances presented here and applying the new standard announced in *Morgan*, the Court finds that Defendants have waived their right to arbitrate this dispute.

## Recommendation

The District Judge should DENY Defendants' Motion to Compel Arbitration (ECF No. 18) because Defendants waived their right to pursue arbitration.

**SO RECOMMENDED.**

May 29, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).