IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAYANA GARCIA, individually and on behalf of all others similarly situated pursuant to 29 U.S.C. § 216(b), | § | |
| Plaintiffs, | § | |
| v. | § | Civ. Action No. 3:23-CV-1585-K |
| FUENTES RESTAURANT MANAGEMENT SERVICES INC. d/b/a Gloria's Restaurant, GLORIA'S RESTAURANT LAS COLINAS LLC d/b/a Gloria's Restaurant, NANCY FUENTES FAIRVIEW INC. d/b/a Gloria's Restaurant, and JOSE FUENTES, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Unopposed Motion for Approval of FLSA Collective Action Settlement, Approval of Notice, and Dismissal with Prejudice (Doc. No. 117) and Appendix in Support (Doc. No. 118) (together, the "Motion"). Having carefully considered the Motion, the applicable law, and the relevant portions of the record, the Court **GRANTS** the Motion in its entirety. This case is hereby **DISMISSED with prejudice** pursuant to the parties' Settlement Agreement.

## I. Factual and Procedural Background

Plaintiff Dayana Garcia ("Plaintiff" or "Garcia") filed this putative collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (the "FLSA"). *See generally* Doc. No. 1. Plaintiff alleged that Defendants Fuentes Restaurant Management Services, Inc. d/b/a Gloria's Restaurant; Gloria's Restaurant Las Colinas LLC d/b/a Gloria's Restaurant; Nancy Fuentes Fairview Inc. d/b/a Gloria's Restaurant; and Jose Fuentes (collectively, "Defendants") violated the tip credit provisions of the FLSA and deprived Plaintiff, a server, and other similarly situated servers of the wages owed to them. *Id.* at 7, ¶14. According to Plaintiff, Defendants violated numerous FLSA's requirements, including failing to provide notice to Garcia and other employees of the tip credit, requiring Garcia and other employees to pay for certain items such as uniforms in order to work for Defendants, improperly handling the tip pool, and requiring Garcia and other employees to perform improper types and excessive amounts of non-tipped work, all while paying Garcia and other employees less than minimum wage. *See, e.g.*, *id.* at 3–7, ¶¶5–12. Defendants deny Plaintiff's allegations in their entirety. *See generally* Doc. No. 7; *see also* Doc. No. 117 at 6 n.1. The docket reflects 15 opt-in plaintiffs filed notices to join this collective action since Garcia filed suit. *See* Doc. Nos. 2, 14, 15, 16, 30, 32, 33, 34, 41, 43, 64-11, 64-12, 87 & 88. The parties state in their Motion that 17 individuals in total have opted-in as plaintiffs. *See* Doc. No. 118 at 15; Doc. No. 118-1 at 4, ¶2.16.

The parties engaged in discovery and mediation in the early stages of this lawsuit. The case, however, did not settle at mediation (Doc. No. 17) and, shortly thereafter, Defendants filed a motion to compel arbitration (Doc. No. 18), which was highly contested, resulting in protracted motion practice (Doc. Nos. 20, 25, 35, 46, 47, 54) and an evidentiary hearing before Magistrate Judge Rebecca Rutherford (Doc. No. 65). Judge Rutherford entered her Findings and Recommendation (the "FCR") (Doc. No. 76) that the Court deny Defendants' motion to compel, to which Defendants filed objections (Doc. No. 77). The Court overruled the objections and accepted the FCR, denying Defendants' motion to compel arbitration (Doc. No. 82). Defendants filed an interlocutory appeal of the Court's order (Doc. No. 85), which triggered an automatic stay of the case pending appeal. In a unanimous panel opinion, the Fifth Circuit affirmed the Court's order denying Defendants' motion to compel (Doc. No. 91) and mandate (Doc. No. 92) issued the same day. Thereafter, the Court entered an initial Scheduling Order (Doc. No. 99). Those deadlines were then stayed three months later when the parties agreed to mediate a second time. Doc. No. 107. The parties settled this matter at that mediation (Doc. No. 108) and ultimately executed the Settlement Agreement (Doc. No. 118-1) now before the Court for approval.

At the time of settlement, Plaintiff had not yet filed a motion for certification of a collective action and distribution of notice to potential opt-in plaintiffs. However, in their Settlement Agreement, the parties stipulate that the putative collective action

members are similarly situated for settlement purposes of this civil matter. Doc. No. 118-1 at 16, ¶7.3; *see* Doc. No. 117 at 31–32.

## II. Settlement Terms and Notice to Collective

The Settlement Agreement provides for payment on a claims-made basis to those individuals who "opt in" pursuant to 29 U.S.C. § 216(b) (the "Claimants"). Doc. No. 117 at 14, 19–20. The Settlement Agreement guarantees a minimum guaranteed payout fund of $2,333,100.00 (the "Floor Minimum Payout") with a maximum payout fund of $6,000,000.00 (the "Maximum Gross Settlement Amount"). *Id.* at 15 (citing Doc. No. 118-1 at §§ 2.9, 2.12, 4.2, 4.3). Each Claimant will receive an individual settlement award based on the number of hours they worked as a server during the time period and were paid a "direct cash wage of less than the federal minimum wage", which will be calculated using a single formula. *Id.* at 14, 17–18. However, the Settlement Agreement guarantees each Claimant will receive a minimum individual settlement award of $1,000.00 (less applicable taxes and withholdings) regardless of the pro rata calculations based on the formula. *Id.* at 18. The Settlement Agreement specifies that Plaintiff Dayna Garcia, Opt-In Plaintiff Alma Ortiz, and Opt-In Plaintiff Yesenia Rico will each receive a service award of $10,000.00 (for a total of $30,000.00). *Id.* at 18. The Settlement Agreement also provides that Plaintiffs' counsel will receive attorneys' fees totaling 33% of the final gross settlement amount but in no event will it be less than $777,700.00 (one-third of the Floor Minimum Payout) or more than

$2,000,000.00 (one-third of the Maximum Gross Settlement Amount). Doc. No. 117 at 34 (citing Doc. No. 118-1 at §§ 2.2, 4.6). Plaintiffs' counsel also seeks reimbursement of their costs under § 216(b), which the Settlement Agreement caps at $70,000.00, "inclusive of both Plaintiffs' Counsel's litigation costs and expenses and all of the Settlement Administrator's notice and administration costs." Doc. No. 117 at 40 (citing Doc. No. 118-1 at § 4.7); Doc. No. 118-16 at 12.

The parties agree that Atticus Administration LLC (the "Administrator"), a third-party settlement administrator, will generally oversee the process of notifying potential opt-in plaintiffs and distributing the settlement funds. Doc. No. 117 at 20–21. The Administrator will first send a "Notice of Settlement" to potential opt-in plaintiffs and will maintain a settlement website on which the notices and claim forms can be found and submitted electronically. *Id.* at 22. The parties attached the proposed settlement website (the "Website"), and form notices and claim forms in both English and Spanish (together, the "Notices"). *See* Doc. No. 118-2, 118-3, 118-4, 118-5, 118-6, 118-7, 118-8. The Website and the Notices, which the parties have agreed upon, explain the specific process for administering these settlement funds. *Id.* at 20–22.

## III. Legal Standard and Applicable Law

"Under section 216(b) [of the FLSA], 'when employees bring a private action for back wages under the [Fair Labor Standards Act], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after

scrutinizing the settlement for fairness.'" *Diaz v. Panhandle Maint., LLC*, Civil Action No. 2:18-CV-0097-Z, 2020 WL 587644, at *2 (N.D. Tex. Feb. 6, 2020)(Kacsmaryk, J.) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dept. of Labor, Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). If the court finds the settlement to be "a reasonable compromise over issues," then the settlement may be approved "in order to promote the policy of encouraging settlement of litigation." *Diaz*, 2020 WL 587644, at *2 (quoting *Lynn's Food Stores*, 679 F.2d at 1354) (internal quotations omitted). Whether a class action settlement should be approved falls within the district court's discretion. *Id.* (citing *Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 WL 9410399, at *2 (S.D. Tex. May 7, 2008)).

In analyzing the parties' settlement, the court must consider two factors: (1) whether the settlement resolves a bona fide dispute over FLSA provisions; and (2) whether the resolution is fair and reasonable. *Lee v. Metrocare Servs.*, Civil Action No. 3:13-CV-2349-O, 2015 WL 13729679, at *1 (N.D. Tex. July 1, 2015)(O'Connor, J.); *see also Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) ("Parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due.") (cleaned up); *Lynn's Food Stores*, 679 F.2d at 1355 (explaining that a court can enter a stipulated judgment when it "determine[s] that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a

bona fide dispute over FLSA provisions").

## IV. Analysis

In this case, the Court finds a bona fide dispute exists and the Settlement Agreement is a fair and reasonable compromise of that dispute.

### A. Bona Fide Dispute

The Court must ensure that a bona fide dispute exists. *See Martin*, 688 F.3d at 255–56. The mere presence of an adversarial lawsuit will not satisfy this requirement; "there must also be some doubt regarding whether the plaintiffs will succeed on the merits." *Lee*, 2015 WL 13729679, at *2 (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719–20 (E.D. La. 2008)); *see Martin*, 688 F.3d at 255–56. "In essence, the Court must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Lee*, 2015 WL 13729679, at *2 (citing *Collins*, 568 F. Supp. 2d at 719).

The parties have been litigating this matter since July 2023. During that time, the parties conducted discovery, participated in early mediation, litigated a motion to compel arbitration and related disputes, which were then appealed, and thereafter mediated a second time. Furthermore, the parties disagree on numerous legal and factual issues, including whether each Defendant is an "employer" that is liable under the FLSA, whether Plaintiff and the putative collective members were required to

perform unrelated nontipped work and, if so, for how much time, whether Plaintiff and the putative collective members are entitled to liquidated damages, and whether Plaintiff could obtain and maintain a collective action. *See, e.g.,* Doc. No. 117 at 25.

The Court has carefully reviewed the record of this matter. In coming to a resolution through the Settlement Agreement, these parties are not simply trying to "negotiat[e] around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Lee*, 2015 WL 13729679, at *2 (citing *Collins*, 568 F. Supp. 2d at 719). The Court finds that a bona fide dispute exists between the parties about the FLSA provisions, and this Settlement Agreement is a compromise to that bona fide dispute. *See id.* at *5.

**B. Fair and Reasonable**

The Court must also determine whether the settlement is fair. In assessing fairness, "courts evaluate the proposed award, the attorney's fees, and the service payments to class representatives." *Lee*, 2015 WL 13729679, at *2. In deciding the fairness of an FLSA settlement, courts usually consider the six factors that govern in Rule 23 class action settlements:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Diaz*, 2020 WL 587644, at *3 (quoting *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)); *see also Collins*, 568 F. Supp. 2d at 721–22 ("Although the Court believes that analogy to Rule 23 is generally appropriate, in accord with the numerous other courts who have considered such factors to determine whether to approve a settlement of a collective action under § 216(b), the Court will adopt or vary these factors in their application in light of the special role of the Court in settlement of FLSA claims.").

The Court has thoroughly reviewed the Settlement Agreement, including all its terms and attachments. Applying the aforementioned factors, the Court concludes that the Settlement Agreement and all of its terms (including the award, attorneys' fees and costs) are a fair and reasonable compromise of the parties' bona fide dispute. The Court finds no evidence of fraud or collusion between the parties. The Court does find the Settlement Agreement reflects an arms' length compromise of the parties' disputed claims, and the Settlement Agreement was signed by the parties who were represented by counsel. *See Diaz*, 2020 WL 587644, at *4; *see also* Doc. No. 118-1 at 19. Having considered the relevant factors, the Court concludes that the Settlement Agreement represents a fair and reasonable resolution of this matter.

**C. Certifying Putative Collective and Notice**

The parties agree, for settlement purposes, that the following putative collective should be certified and should receive notice:

> all individuals who worked at least one shift as a server at any of Defendants' 22 restaurant locations in Texas, and who were paid a "direct cash wage of less than the federal minimum wage" (that is – were paid less than $7.25 per hour before tips were added to their hourly wage), between July 14, 2020 through December 31, 2023.

Doc. No. 118 at 5, §2.18; *see* Doc. No. 117 at 15, 31–32. Plaintiff contends that, for settlement purposes, the collective members are "similarly situated" because:

> (1) the settlement collective members worked under the same alleged conditions and compensation policies; (2) were subject to the same alleged unlawful minimum wage and tip credit practices but, Plaintiffs allege, did not receive payment at the applicable minimum wage rate; and (3) the same defenses apply to all settlement collective members since Defendants strenuously deny the allegations in this matter.

Doc. No. 117 at 32. Defendants do not challenge that, for settlement purposes, the putative collective is "similarly situated" and certification should be permitted. Case law indicates that "courts in the Fifth Circuit have never imposed [] a requirement" that certification of a collective occur "prior to approving an FLSA collective action settlement." *In re Wells Fargo Wage & Hour Emp. Pracs. Litig. (No. III)*, 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014); *accord Vassallo v. Goodman Networks, Inc.*, 2016 WL 6037847, at *1 n.1 (E.D. Tex. Oct. 14, 2016). The Court recognizes that this case law pre-dates *Swales v. KLLM Transp. Servs., L.L.C*, 985 F.3d 430 (5th Cir. 2021), which expressly rejected *Lusardi*'s two-step approach to certification. However, the Court is not persuaded that *Swales* demands certification prior to court-approval of an FLSA collective action settlement.

On this briefing and record, the Court agrees that the collective members are "similarly situated", at least for settlement purposes, such that notice should go out to those potential plaintiffs and finds that the proposed notice is proper in scope. *See Swales*, 985 F.3d at 442 (explaining that the district court is tasked with determining "whether notice is necessary" in the first instance and, if it is, "that any notice sent is proper in scope—that is, sent only to potential plaintiffs"). The proposed Website and Notices inform potential opt-in plaintiffs of the general terms of the Settlement Agreement, the guaranteed minimum individual award and summary of the formula for determining each individual award, the tax treatment of the awards, the scope of the release, and the process for submitting a claim. *See* Doc. No. 118-2, 118-3, 118-4, 118-6, 118-7, 118-8. The Court, therefore, certifies the proposed collective (as defined above) and approves the proposed forms of notice.

**D. Reasonableness of Attorneys' Fees, Costs and Expenses, and Service Awards**

1. Attorneys' Fees and Costs and Expenses

Under the FLSA, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The court must determine the reasonableness of the proposed attorneys' fees in deciding whether to approve a settlement agreement. *Lee*, 2015 WL 13729679, at *3. Courts have concluded that

careful scrutiny is particularly necessary when there is a common fund settlement, as there is here. "An application for attorney's fees from a common fund has no natural enemies, so judicial oversight is necessary to protect the interests of the class. This is so even where no class member has objected to the proposed attorneys' fee award." *In re Harrah's Ent., Inc.*, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998) (internal citations omitted); *see Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 673 (N.D. Tex. 2010)(Fitzwater, C.J.) ("Because it has an independent duty to review the fee request [in a common fund settlement] in the interests of protecting the class, 'a district court is not bound by the agreement of the parties as to the amount of attorneys' fees.'")(quoting *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998)).

"In class action suits where a common fund is recovered and fees are awarded by the court from the fund, the Supreme Court has indicated that computing fees as a percentage of the fund recovered is the proper approach." *Lee*, 2015 WL 13729679, at *3 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1974)). The Fifth Circuit has "endorsed" district courts using the percentage method to calculate attorneys' fees in class action settlements when that method is "cross-checked with the *Johnson* factors." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).

The Settlement Agreement provides that Plaintiffs' counsel will receive 1/3, or 33%, of the final gross settlement amount. *See also* Doc. No. 118-1 at § 2.2. Courts in the Fifth Circuit have found attorneys' fees awards of 33% to be within the range of

reasonableness. *See Gay v. Mortg. Contracting, Servs., LLC*, 2026 WL 1091592, at *9 (Apr. 22, 2026) (recognizing that courts in the Fifth Circuit "frequently award attorney's fees up to thirty-three percent of the settlement [common] fund"); *In re Harrah's Ent., Inc.*, 1998 WL 832574, at *4 ("It is not unusual, however, for district courts in the Fifth Circuit to award percentages of approximately one third."); *see, e.g.*, *Herbert*, 2022 WL 1608639, at *4 (approving attorneys' fees award of one-third of the settlement fund); *Lee*, 2015 WL 13729679, at *7–8 (approving fee award of 34.78%); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). The Court concludes here that an attorneys' fees award of 33% is within the range of reasonableness.

The Court further concludes that the requested award is reasonable on this record. In making this determination, the Court has carefully considered Plaintiffs' application for these fees, Doc. No. 117 at 32–40, and the sworn Declaration of Drew Herrmann, counsel for Plaintiffs, Doc. No. 118-6 (the "Herrmann Declaration"), submitted in support of this request. The Court cross-checked the percentage method with the twelve *Johnson* factors and concludes the requested fee award requires no adjustment. *See Union Asset*, 669 F.3d at 644. The Court finds the requested fee award of 33% is fair and reasonable.

Plaintiffs also request reimbursement for their costs and expenses incurred in this litigation. Pursuant to the Settlement Agreement, the costs and expenses are capped at $70,000.00, inclusive of the Settlement Administrator's notice and administration costs. Doc. No. 118-1 at § 4.7. The Court concludes that, on this record, these costs and expenses are reasonable.

2. Service Award

A class representative may receive a service award if it is fair and reasonable. *Herbert v. LTC Delivery LLC*, Civ. Action No. 3:19-CV-1856-X, 2022 WL 1608639, at *3 (N.D. Tex. May 20, 2022)(Starr, J.). These awards serve to compensate class representatives for their time and assistance in litigating the matter, such as participating in mediation, discovery, and hearings. *Lee*, 2015 WL 13729679, at *4. Whether such an award should be conferred is left to the district court's discretion. *Id.* at *5.

"Courts in this circuit have approved service awards anywhere from no amount to $16,000, with the higher service awards being granted in cases with larger million-dollar settlements." *Roberts v. Baptist Healthcare Sys., LLC*, 2023 WL 5163374, at *7 (E.D. Tex. June 29, 2023) (collecting cases). "While there does not appear to be any Fifth Circuit precedent identifying 1% of the common fund as a ceiling for service awards, a review of the case law on this issue reflects that where service awards are paid out of a common fund, they tend to be far less than 1% of the common fund." *Lee*,

2015 WL 13729679, at *4 (collecting cases).

Under the terms of the Settlement Agreement, Plaintiff Garcia, Opt-In Plaintiff Ortiz, and Opt-In Plaintiff Rico would each receive a service award of $10,000.00 (for a total of $30,000.00)—that individual award amounts to 0.004% of the Floor Minimum Payout ($2,333,000.00) or 0.0016% of the Maximum Gross Settlement Amount ($6,000,000.00). In support of these awards, Plaintiffs submit the Herrmann Declaration, which explains the efforts expended and specific actions taken by Plaintiff Garcia, Opt-In Plaintiff Ortiz, and Opt-In Plaintiff Rico to assist in this litigation. *See* Doc. No. 118-6 at 9, ¶28.

The Court has considered this record and the relevant factors in determining whether to approve these service awards. *See Sanchez v. 600 N. Akard LLC*, Civ. Action No. 3:23-CV-0540-L-BN, 2025 WL 5270869, at *5 (N.D. Tex. Sept. 29, 2025)(Horan, M.J.), *accepted by*, 2026 WL 2517040 (N.D. Tex. Aug. 25, 2026)(Lindsay, J.). The Court finds the $10,000.00 service awards each to Plaintiff Garcia, Opt-In Plaintiff Ortiz, and Opt-In Plaintiff Rico are warranted and that the requested awards are fair and reasonable.

## V. Conclusion

For all these reasons, the Court **approves** the parties' Settlement Agreement in its entirety, including the Exhibits thereto, and **GRANTS** the Motion. (All terms used herein shall have the meaning ascribed in the Settlement Agreement.) Accordingly, it

is **ORDERED** that:

(1) The Settlement Agreement shall become effective as of the date of this Order.

(2) Solely for purposes of this Settlement Agreement, the Court certifies the proposed the Putative Settlement Collective Member definition and the group as a collective, under 29 U.S.C. § 216(b).

(3) The Court finds that the claims-made plan for distribution of Notice and return of a Claim Form is reasonable FLSA notice and claim process, practicable under the circumstances, and satisfies the requirements under the FLSA. This plan is, therefore, approved and adopted. The Notice complies with Section 216(b) of the FLSA and is appropriate as part of the plan for issuing Notice as set forth in the Settlement Agreement.

(4) The Court approves the appointment of Atticus Administration, LLC to serve as the third-party Settlement Administrator pursuant to the terms of this Settlement Agreement, and to establish and administer a QSF.

(5) The Court approves the forms and methods of Notice, the Claim Form, and the Website attached to the Settlement Agreement as Exhibits 1–5 and directs the Settlement Administrator to disseminate and administer such forms of Notice in accordance with the Settlement Agreement terms.

(6) The Court approves the monetary terms of the Settlement pursuant to the terms of the Settlement Agreement, including:

a. The formula to calculate Individual Settlement Awards and the funding of the same pursuant to the terms of the Settlement Agreement (Floor Minimum Payout, Final Gross Settlement Amount, Maximum Gross Settlement Amount, Net Settlement Fund, Maximum Net Settlement Fund).

b. The Attorneys' Fee Award in an amount equal to 1/3 of the Final Gross Settlement Amount.

c. The Cost and Expenses Award of no more than $70,000.00.

d. The Service Awards of $10,000.00 **each** to Dayana Garcia, Alma Ortiz, and Yesenia Rico.

e. The unclaimed Claimant Check process at Section 4.9 of the Settlement Agreement.

(7) The Releases in Section 5 of the Settlement Agreement are valid and enforceable under the FLSA with respect to Claimants and Dayana Garcia, Alma Ortiz, and Yesenia Rico, as applicable, and releases the Released Parties.

In accordance with the Settlement Agreement and as requested in the Motion, the Court hereby **DISMISSES** this mater in its entirety **with prejudice**.

The Court retains jurisdiction solely to construe, interpret, and enforce the Settlement Agreement should any dispute arise from this Settlement Agreement.

**SO ORDERED.**

Signed November **9th**, 2026.

Ed Kinkeade
ED KINKEADE
UNITED STATES DISTRICT JUDGE